IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

GRANGE HOLDINGS INC.,

        Plaintiff,

        v.

KANSAS CITY LIFE INSURANCE
COMPANY, and GRANGE LIFE
INSURANCE COMPANY,

        Defendants.

Civil Action No. 24-00160-RGA

---

## MEMORANDUM ORDER

Before me is Plaintiff's motion for judgment on the pleadings (D.I. 51) and Defendants' motion to strike or for leave to file a sur-reply (D.I. 59). I have considered the parties' briefing. (D.I. 52, 57, 58, 66, 67). For the reasons set forth below, Defendants' motion is DISMISSED as moot. Plaintiff's motion is DENIED.

### I.      BACKGROUND

Plaintiff Grange Holdings is an Ohio corporation formed to own 100% of the voting stock in Grange Insurance Company, formerly known as Grange Mutual Casualty Company ("Grange Mutual"). (D.I. 18 at 3 ¶ 10). Plaintiff offers "auto, home, and business insurance." (*Id.* at 3 ¶ 11). Defendant Kansas City Life Insurance Company ("Kansas City") is a Missouri corporation. (D.I. 22 at 2 ¶ 4). Kansas City "markets life, annuity, and group [insurance] products" throughout the United States. (*Id.* at 6 ¶ 16). Defendant Grange Life Insurance Company ("Grange Life") is an Ohio corporation and is wholly owned by Kansas City. (*Id.* at 3 ¶ 5).

1

Grange Mutual previously owned and operated Grange Life to "market and sell life insurance policies." (D.I. 18 at 4 ¶ 17). In June 2018, Kansas City purchased 100% of the issued and outstanding shares of Grange Life stock pursuant to a Stock Purchase Agreement ("SPA"). (D.I. 22 at 6 ¶ 18; D.I. 22-1 at 1–80 of 135, Ex. 1, SPA). The SPA had an effective date of October 1, 2018. (D.I. 22 at 6 ¶ 18). Pursuant to the SPA, Grange Mutual agreed not to sell life insurance for five years. (*Id.* at 6 ¶ 19). Defendants assert in their Answer that "nothing in the Stock Purchase Agreement states, provides for, or indicates, that the selling party, [Grange Mutual] . . . would be able to use the Grange Life name to sell life insurance after the expiration of that period of five (5) years." (*Id.* at 6–7 ¶ 19).

Kansas City, Grange Life, and Grange Mutual also entered into a Trademark License Agreement ("TLA") on October 1, 2018. (*Id.* at 7 ¶ 20; D.I. 18-1, TLA). The TLA granted Kansas City a license to use the registered trademarks GRANGE LIFE INSURANCE (Reg. No. 3821202) and GRANGE LIFE INSURANCE and design (Reg. No. 3723316) (the "Licensed Marks") for "five (5) years from the Effective Date of October 1, 2018." (D.I. 22 at 7–8 ¶¶ 22, 26 (cleaned up); D.I. 18-1 at 1, TLA § 1; *id.* at 9 of 9, TLA Ex. A).

The TLA states, in part:

> 1.    License Granted.  On and subject to the provisions of this Agreement and during the Term (defined below), Licensor hereby grants to Licensees, for the benefit of themselves and their Affiliates, a nonexclusive, nontransferable, non-assignable, restricted, royalty-free right and license to use the Licensed Marks for the Term, solely in the United States of America, except for new sales and solicitation of insurance products in the states of Washington, Oregon, Wyoming, Idaho, California, and Colorado, and to register domain names ("Net Names") incorporating the Licensed Marks to direct to websites offering Goods and Services under the Licensed Marks.  For the avoidance of doubt, nothing herein restricts the Licensees or their Affiliates from utilizing the Licensed Marks for purposes of administering life insurance products sold by Grange Life in accordance with the terms of this Agreement.

(D.I. 18-1 at 1, TLA § 1).

2

> 3.2    Licensees recognize and acknowledge that the goodwill associated with the
> Licensed Marks inures to the benefit of Licensor.  Licensees acknowledge
> Licensor's right, title and interest in and to the Licensed Marks, and will not
> represent nor cause their Affiliates to represent, that they have any ownership
> therein or in any registration thereof, and will not knowingly do or cause to be done
> any act or thing contesting such right, title and interest. . . .

(*Id.* at 2, TLA § 3.2).

> 6.    Term.  This Agreement shall continue in full force and effect from its
> Effective Date as first above written for a term ending that is five (5) years from
> the Effective Date.  The Parties agree that the term can be extended by mutual
> written agreement.

(*Id.* at 3, TLA § 6).

> 7.2    On termination or expiration of this Agreement, Licensees shall, and shall
> cause their Affiliate[s] to, within ninety (90) days, cease and forever abstain from
> using the Licensed Marks, and return to Licensor, or effectively destroy, all
> documents and other tangible forms bearing the Licensed Marks, or any variation
> thereof, and take such further action as Licensor may deem reasonably necessary
> or desirable to demonstrate that Licensees have ceased using and have no further
> interest or right whatsoever in said Licensed Marks. . . .

(*Id.* at 3, TLA § 7.2).

The TLA's five-year term and 90-day phase-out period expired on December 30, 2023.

(D.I. 22 at 9 ¶¶ 29–30; D.I. 18-1 at 1; *id.* at 3, TLA §§ 6, 7.2).  Defendants admitted that they

"have no intention to stop using the Licensed Marks prior to December 30, 2023 or anytime

thereafter," but deny that the character of their use constitutes breach of contract or infringement

of Plaintiff's trademarks.  (D.I. 22 at 11 ¶¶ 35, 36, 38).

Plaintiff filed a complaint in the Southern District of Ohio seeking a declaratory

judgment that Defendants' use of Plaintiff's Licensed Marks after December 30, 2023 would

infringe Plaintiff's trademark rights and violated Ohio law.  (D.I. 1 at 7–9).  The parties jointly

moved to transfer the case to the District of Delaware.  (D.I. 11).  Plaintiff filed an amended

complaint replacing Ohio law with Delaware law.  (D.I. 18 at 9).  Defendants filed an answer

and counterclaim[1] seeking (1) a declaratory judgment that Defendants' continued use does not violate Plaintiff's trademark rights and (2) cancellation of the Licensed Marks. (D.I. 22 at 33).

Plaintiff moved for judgment on the pleadings on its declaratory judgment claim and Defendants' declaratory judgment counterclaim. (D.I. 51; D.I. 52 at 17).

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). I "may not grant the motion unless [the plaintiff] clearly establishes that no material issue of fact remains to be resolved and that [the plaintiff] is entitled to judgment as a matter of law." *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d. Cir. 2019) (internal citation omitted). "A motion for judgment on the pleadings under Rule 12(c) 'is analyzed under the same standards that apply to a Rule 12(b)(6) motion.'" *Id.* (quoting *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010)). I must accept all factual allegations as true and "view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party[.]" *Id.* (citation omitted); *see Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007); *McMullen v. Maple Shade Twp.*, 643 F.3d 96, 98 (3d Cir. 2011). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A court must "draw on its judicial experience and common sense" when making a determination. *Id.*

In deciding a Rule 12(c) motion, "a court may only consider 'the [pleadings], exhibits attached to the [pleadings], matters of public record, as well as undisputedly authentic documents

---

[1] Defendants have not filed a cross-motion for judgment on the pleadings. (*See* D.I. 57 at 9 n.3).

if the . . . claims are based upon these documents.'" *Wolfington*, 935 F.3d at 195 (citation

omitted). A court may consider documents not attached to the pleadings if the documents are

"integral to or explicitly relied upon" in the pleadings. *In Re Burlington Coat Factory Sec.*

*Litig.*, 114 F.3d 1410, 1426 (3d. Cir. 1997) (citation omitted).

## III. DISCUSSION

### A. Motion to Strike or File Sur-Reply

Defendants argue that Plaintiff raises four new arguments in its reply brief that it should

have raised in its opening brief. These are: (1) "The 'avoidance of doubt' provision should be

construed against the Defendants"; (2) "The Defendants are estopped from challenging the

validity of the asserted trademark registrations"; (3) "A fair use defense is unavailable for a

breach of contract claim"; and (4) "No proof of infringement is necessary for a 'terminated

franchisor.'" (D.I. 59 at 2 (citing D.I. 58 at 3, 7–10)). Plaintiff argues that its reply brief was

responsive to new issues raised in Defendants' opposition brief. (D.I. 66 at 3–6). Defendants

counter that "responsiveness alone is not the operative question," but rather the issue is whether

Plaintiff's arguments "should have been included in a full and fair opening brief." (D.I. 67 at 1

(citing D. Del. LR 7.1.3(c)(2))).

When a party raises an argument supporting a basis for dismissal for the first time in its

reply brief, the argument may violate Rule 7.1.3(c)(2). *See Marvel v. Prison Indus., Inc.*, 2000

WL 1239962, at *5 n.10 (D. Del. Aug. 24, 2000); D. Del. LR 7.1.3(c)(2) ("The party filing the

opening brief shall not reserve material for the reply brief which should have been included in a

full and fair opening brief."). However, a party "does not violate Local Rule 7.1.3(c)(2) when

the new material in its reply brief responds to arguments raised in the . . . answering brief."

*F'Real Foods, LLC v. Hamilton Beach Brands, Inc.*, 2020 WL 4932223, at *1 (D. Del. June 24, 2020), *aff'd without opinion*, 854 F. App'x 379 (Fed. Cir. 2021).

I agree with Plaintiff that the arguments are responsive to Defendants' opposition brief. I do not need to decide whether Plaintiff should have raised the four arguments in its opening brief, because the arguments are irrelevant to my analysis in this motion for judgment on the pleadings. Defendants' motion to strike or file a sur-reply (D.I. 59) is DISMISSED as moot.

## B. Contract Interpretation[2]

The dispute between the parties boils down to whether Defendants may continue to "use" the licensed Grange Life trademarks in their administration of existing life insurance policies issued under that name. (D.I. 52 at 2; D.I. 57 at 4–5). Inherent in that question, the parties dispute what "use" means under the TLA.

Plaintiff argues, "It is undisputed that Defendants represented orally and in writing that they do not intend to cease use of the Licensed Marks." (D.I. 52 at 4 (citing D.I. 18 at 6 ¶ 32; D.I. 22 at 10 ¶ 32)). Defendants specifically admit in their answer "that they intend to continue use" of the marks "for non-trademark purposes," "as fair use," or in other ways permitted or required by law. (D.I. 22 at 10 ¶ 32).

Defendants agree with Plaintiff that the license to sell and advertise new life insurance policies under the Grange Life marks expired after five years. (D.I. 57 at 6). Defendants argue, however, that the TLA explicitly authorizes continued use of the Licensed Trademarks "for

---

[2] Contrary to what Section 9.1.5 of the TLA would indicate (D.I. 18-1 at 4, TLA § 9.1.5), the Parties agree that the TLA is governed by Delaware law, not Ohio law. (D.I. 52 at 1; *see also* D.I. 16 at 1–3). The SPA defines the "Trademark License Agreement" as a "Transaction Agreement," and states that "Transaction Agreements" and related disputes are governed by Delaware law, overriding the choice of law provision in the TLA. (D.I. 22-1 at 15 of 135, Ex. 1 (SPA); *id.* at 74 of 135, SPA § 10.5).

purposes of administering existing life insurance policies" after those five years. (*Id.* at 5–6). In support, Defendants cite Section 1 of the TLA, which states: "For the avoidance of doubt, nothing herein restricts the Licensees or their Affiliates from utilizing the Licensed Marks for purposes of administering life insurance products sold by Grange Life in accordance with the terms of this Agreement." (D.I. 18-1 at 1, TLA § 1). Defendants contend their continued use is "nominal" and "deny all use except that needed to service existing policies." (D.I. 57 at 8, 10). As Defendants note in their counterclaim, "The Grange Life Insurance name in this case accurately identifies the historic source of the product." (D.I. 22 at 27 ¶ 95).

Plaintiff counters that "the TLA prohibits any use, not just trademark uses. So, any reference at all to the words or phrases identified as 'Licensed Marks' under the agreement is prohibited." (D.I. 58 at 7).[3]

Both sides argue the language in the TLA granting the license is unambiguous. (D.I. 52 at 7–13; D.I. 57 at 5). They disagree on the meaning. Simply because they disagree on the meaning, however, does not mean that the TLA is ambiguous. *Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992) ("[A] contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings.").

---

[3] The declaratory judgment does not allege a breach of contract. Rather, it alleges Defendants' use will infringe the Plaintiff's trademarks (and will constitute a deceptive trade practice) after December 30, 2023. (D.I. 18 at 8–9 ¶¶ 52–53, 56–59). The amended complaint, filed March 8, 2024, does not contain a single factual allegation of any actual trademark infringement after December 31, 2023. Defendants deny that their "use" of the trademarks is infringing. (D.I. 22 at 27 ¶ 95). Plaintiff interprets the contract—the TLA—as giving it much broader rights than is required by trademark law. The breadth is embodied in Plaintiff's proposed order: "Defendants are enjoined from any further use of the GRANGE LIFE INSURANCE trademarks." (D.I. 51-1). Even if Plaintiff's interpretation of the TLA were correct, I could not grant judgment on the pleadings for a breach of contract claim that is not asserted in the pleadings and that is not based on any relevant factual allegations.

When determining if contract language is ambiguous, "[t]he duty of the courts is to examine solely the language of the contractual provisions in question to determine whether the disputed terms are capable of two or more reasonable interpretations." *O'Brien v. Progressive N. Ins. Co.*, 785 A.2d 281, 289 (Del. 2001).

For the reasons set out below, I find that the TLA is not ambiguous. Plaintiff's interpretation that "use" means "any reference at all" (D.I. 58 at 7) is not reasonable. What is reasonable is that "use" means "use as a trademark."

First, consider the context in which the word "use" appears in the license grant. The TLA is a "trademark license." Defendants needed permission to use the trademarks as trademarks. Hence, the license. Defendants did not need permission to use the trademarks for nontrademark uses. Parties to such a contract would reasonably believe that they are contracting to use the Licensed Marks *as trademarks*—or as symbols designating the source of a product. Though "use" has a broad colloquial meaning, "use" has a narrower and more specific meaning in the trademark context. *Cf. Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140, 155–57 (2023) (discussing variable applicability of *Rogers* to "trademark use" and "nontrademark uses" of a mark). "[W]here a word has attained the status of a term of art and is used in a technical context, the technical meaning is preferred over the common or ordinary meaning." *Penton Bus. Media Holdings, LLC v. Informa PLC*, 252 A.3d 445, 461 (Del. Ch. 2018) (citation omitted). Similarly, "When established legal terminology is used in a legal instrument, a court will presume that the parties intended to use the established legal meaning of the terms." *Id.* (citation omitted). The context is consistent with Defendants' interpretation of "use," not Plaintiff's.

Second, the TLA grants two licenses: a broad license "to use" the trademarks for the term of the agreement (with some limited exceptions) and a specific license "to register" domain

8

names "incorporating" the trademarks that "direct" to websites.  (D.I. 18-1 at 1, TLA § 1).

Section 7.2 of the TLA separately provides that, after the expiration of the TLA and its grace

period, the licensees "shall . . . cease and forever abstain from using the [trademarks]."  (*Id.* at 3,

TLA § 7.2).  The same section also addresses the disposition of the registered domain names.

The fact that there are two licenses is significant.  Contract law prefers interpretations that do not

make any part of the agreement surplusage. *Kuhn Constr., Inc. v. Diamond State Port Corp.*,

990 A.2d 393, 396–97 (Del. 2010).  The parties were trying to capture something in the

registered-domain-names part of the license that was not captured by the use-of-trademarks part

of the license.  If the meaning of "use" were as broad as Plaintiff claims, however, the license for

domain names would be superfluous.  Thus, the structure of Sections 1 and 7.2 is consistent with

Defendants' interpretation, but not with Plaintiff's.

Third, Section 1 authorizes Defendants to "use" the Licensed Marks for the five-year

term.  Based on the preamble, the TLA contemplates "use" of the marks to involve "sales of life

insurance products and administrative services" during the five years, but not thereafter.  Section

1 goes on to clarify that, for those products sold "in accordance with the terms" of the TLA,

"nothing herein restricts the Licensees or their Affiliates from utilizing the Licensed Marks for

purposes of administering life insurance products[.]" (D.I. 18-1 at 1, TLA § 1).  Notably, the

license-granting part of the TLA (Section 1) employs the word "utilizing" in association with

"administering," not "using."  The choice to use different words can indicate different intended

meanings. *See Stream TV Networks, Inc. v. SeeCubic, Inc.*, 279 A.3d 323, 338–39 (Del. 2022)

(agreeing that "difference in word choice must be seen as 'intentional,'" and holding that

differing word choice indicated a broader meaning in a corporate charter than in a statute).  The

different word choice here supports the conclusion that "use" is referring to "use as a trademark" whereas "utilize" is referring to nontrademark uses.

      Plaintiff argues that Defendants were authorized to "utiliz[e]" the Licensed Marks "in accordance with the terms" of the agreement (i.e. for a "term" of five years). (D.I. 58 at 2). However, "a modifying phrase 'normally applies only to the nearest reasonable referent.'" *ITG Brands, LLC v. Reynolds Am., Inc.*, 2017 WL 5903355, at *7 (Del. Ch. Nov. 30, 2017) (citation omitted) (discussing and applying the "nearest reasonable referent" canon of construction to a contract). The modifying language "in accordance with the terms" is closer in the sentence to "life insurance products sold" than it is to "utilizing." Therefore, the sentence in the TLA may reasonably be parsed as: "For the avoidance of doubt, nothing herein restricts the Licensees or their Affiliates from utilizing the Licensed Marks for the purposes of administering [life insurance products sold by Grange Life in accordance with the terms of this Agreement]." (D.I. 18-1 at 1, TLA § 1). Put another way, if Defendants abided by the requirements of the TLA while selling life insurance products under the Grange Life marks during the five-year term, those products were sold "in accordance with the terms of this Agreement." Going forward, "nothing" in the TLA "restricts" Defendants from "utilizing" the marks for nontrademark uses while administering those insurance policies that have already been sold.

      Plaintiff's main argument is that the TLA requires that Defendants "forever abstain from *using* the Licensed Marks" after the five-year term is up. (D.I. 18-1 at 3, TLA § 7.2 (emphasis added)). However, in context, "using" in Section 7.2 simply parallels the license grant in Section 1. As discussed previously, "use" in Section 1 means to "use" the trademarks for trademark purposes. The meaning of "using" should be consistent between the grant section and the

termination section.  Plaintiff's argument that it means something different in the termination section is not reasonable.

The TLA does not prohibit Defendants' continued utilization of the Licensed Marks to administer existing life insurance policies.  As to whether Defendants' use violates Plaintiff's rights in its marks under trademark law, that inquiry involves questions of fact and cannot be resolved simply by looking at the contract.  Plaintiff's motion for judgment on the pleadings is DENIED.

## IV.   CONCLUSION

Defendants' motion to strike or file a sur-reply (D.I. 59) is DISMISSED as moot. Plaintiff's motion for judgment on the pleadings (D.I. 51) is DENIED.

IT IS SO ORDERED.

Entered this _20th_ day of May, 2025

_____
United States District Judge

11